# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

JAIME CRUZ MATA,
WILMER E. LOPEZ MARTINEZ,
EUSEBIO REYES CASTRO,
  and
DENIS E. MELGAR MARTINEZ,

  Plaintiffs,

v.

G.O. CONTRACTORS GROUP, LTD.,
  and
NESTOR GOMEZ,

  Defendants.

Civil Action No. TDC-14-3287

## MEMORANDUM OPINION

Plaintiffs Jaime Cruz Mata, Wilmer E. Lopez Martinez, Eusebio Reyes Castro, and Denis E. Melgar Martinez bring this action against Defendants G.O. Contractors Group, Ltd. ("G.O. Contractors") and Nestor Gomez for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (2012), the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl., § 3-401 *et seq.* (2011), and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl., § 3-501 *et seq.* (2011). Pending before the Court is Plaintiffs' Motion for Default Judgment, ECF No. 7. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Motion for Default Judgment is GRANTED.

## BACKGROUND

G.O. Contractors is a Maryland corporation that, between 2011 and 2014, annually grossed more than $500,000 in sales or business and had at least two employees who handled, sold, or worked on goods that have been in interstate commerce. Gomez is the owner of G.O. Contractors, and during the relevant time period, he controlled the daily operations of the company, supervised Plaintiffs either directly or indirectly, and had the power to hire, fire, suspend, and discipline them. He also had the power to set Plaintiffs' work schedules and pay rates and to determine the method by which Plaintiffs were paid.

Cruz Mata worked as a construction laborer for G.O. Contractors from approximately August 1, 2011 until July 31, 2014. From his start date to March 14, 2013, he was paid at a base rate of $16.00 per hour; from March 15, 2013 until May 30, 2014, he was paid at a base rate of $18.00 per hour; and from May 31, 2014 through July 31, 2014, he was paid $20.00 per hour. While employed by G.O. Contractors, Cruz Mata worked 1,727.54 hours of overtime but was not compensated at the rate of one-and-one-half times his regular wage rate, as mandated by the FLSA and the MWHL. In addition, Cruz Mata worked 144.44 regular hours during 2013 and 2014 for which he was not compensated at the base wage rate. *See* Mot. Default. J., Ex. 1 (Cruz Mata Declaration), ECF No. 7-1; Supp. to Mot. Default J., ¶¶ 1-6, ECF No. 9.

Lopez Martinez worked as a construction laborer for G.O. Contractors between May 10, 2014 and July 31, 2014 at a rate of $17.00 per hour. During that period, Lopez Martinez worked 295.44 hours of overtime without compensation at the mandated overtime rate. *See* Mot. Default. J., Ex. 2 (Lopez Martinez Declaration), ECF No. 7-2.

Reyes Castro worked as a construction laborer for G.O. Contractors between March 1, 2011 and July 31, 2014. He started at a rate of $15.00 per hour, and then from April 12, 2013

onward, he earned $16.00 per hour. Over the course of his employment, Reyes Castro worked 580.96 hours of overtime without being paid at the mandated rate, and he also worked 170 hours of regular time labor in 2014 for which he was not compensated. *See* Mot. Default. J., Ex. 3 (Reyes Castro Declaration), ECF No. 7-3; Supp. to Mot. Default J., ¶¶ 9-14.

Melgar Martinez was employed by G.O. Contractors between approximately December 9, 2013 and December 19, 2014 and was paid at a rate of $17.00 per hour. During that period, Melgar Martinez worked 68 hours that went uncompensated. *See* Mot. Default. J., Ex. 4 (Melgar Martinez Declaration), ECF No. 7-4.

While employed by G.O. Contractors, Lopez Martinez, Reyes Castro, and Melgar Martinez did not see any signs in the workplace advising employees of their right to overtime pay.

On October 21, 2014, Plaintiffs filed suit, alleging that G.O. Contractors and Gomez had failed to pay them overtime wages and regular wages in violation of the FLSA, the MWHL, and the MWPCL. On October 26, 2014, G.O. Contractors and Gomez were each timely served with a Summons and the Complaint. Defendants failed to respond or appear. On December 3, 2014, Plaintiffs filed a Motion for Default Judgment. On Dec. 9, 2014, the Clerk entered a default as to both Defendants pursuant to Federal Rule of Civil Procedure 55(a), to which Defendants have not responded. On March 13, 2015, Plaintiffs filed the instant Motion for Default Judgment, to which Defendants also have not responded.

## DISCUSSION

### I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

3

is shown by affidavit or otherwise, the clerk must enter the party's default." Pursuant to Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494-95 (D. Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421-22 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F. 2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). The court must then determine whether the allegations support the relief sought. *See id.*; *see also* 10A C. Wright, A. Miller, *et al.*, Fed. Prac. & Proc. Civ. § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default ... and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If liability is established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780–81. The court does not accept as true the factual allegations of the plaintiff relating to damages, but must instead make an independent determination based on documentary evidence, including affidavits. *See Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422. To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."). Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

## II. Liability

### A. Defendants' Status as "Employers"

There is no question that G.O. Contractors is an employer within the meaning of the FLSA, the MWHL, and the MWCPL. The FLSA covers any enterprise "engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and grosses at least $500,000 per year in business, both of which are true of G.O.

5

Contractors. 29 U.S.C. §§ 203(s); *Donovan v. Kentwood Dev. Co., Inc.*, 549 F. Supp. 480, 483 (D. Md. 1982); *see* Compl. ¶¶ 1-6, 8. The MWHL, which is the "State parallel" of the FLSA, broadly defines "employer" to include entities such as G.O. Contractors. *Newell v. Runnels*, 967 A.2d 729, 771 (Md. 2009) (quoting *Friolo v. Frankel*, 819 A.2d 354, 361 (Md. 2003)); Md. Code Ann., Lab. & Empl. §§ 3-101, 3-401. Finally, the MWPCL covers employers who have hired employees within Maryland. Md. Code Ann., Lab. & Empl. § 3-501(b). G.O. Contractors employed Plaintiffs in Maryland, *see* Compl. ¶¶ 3-4, so G.O. Contractors is also an employer within the meaning of the MWPCL.

Gomez, the owner of G.O. Contractors, also qualifies as an employer under the FLSA, the MWHL, and the MWPCL. The FLSA defines "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The MWHL has a nearly identical definition of "employer," including any "person who acts directly or indirectly in the interest of another employer with an employee." Md. Code Ann., Lab. & Empl. § 3-401; *see also Newell*, 967 A.2d at 771. The MWPCL's definition is different, but still broad, including "any person who employs an individual in the State or a successor of the person." *Id.* § 3-501(b). To determine whether a supervisor can be a considered an employer under these broad definitions, courts use the "economic reality" test. *Schultz v. Capital Int'l Sec. Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (FLSA); *Newell v. Runnels*, 967 A.2d 729, 772 (Md. 2009) (FLSA and MWHL); *Campusano v. Lusitano Const., LLC*, 56 A.3d 303, 308 (Md. Ct. Spec. App. 2012) (MWPCL). Specifically, courts consider whether the employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Newell*, 967 A.2d at 772. Here, Plaintiffs' allege that Gomez

had the power to hire and fire Plaintiffs, and that he supervised them, controlled their schedules, and directly or indirectly determined their rate of employment. As a matter of economic reality, then, Gomez was Plaintiffs' employer and is thus potentially liable under the identified federal and state statutes.

## B. Defendants' Violations of the FLSA, the MWHL, and the MWPCL

A violation of the FLSA and the MWHL occurs when an employer fails to pay an employee overtime wages—one-and-one-half times the employee's base wage—for every hour over 40 hours worked in a week. 29 U.S.C. § 207; Md. Code Ann., Lab. & Empl. § 3-415. Here, Plaintiffs establish through their uncontested allegations in the Complaint and their individual affidavits that, between 2011 and 2014, G.O. Contractors and Gomez violated the FLSA and MWHL by failing to pay Cruz Mata, Lopez Martinez, and Reyes Castro overtime wages at the mandated rate. Specifically, through their declarations, Cruz Mata asserts that he worked 1,727.54 overtime hours at which he was not compensated at the mandated overtime rate; Lopez Martinez states that he worked 295.44 hours of overtime at which he was not compensated at the mandated overtime rate; and Reyes Castro claims that he worked 580.96 hours of overtime without the mandated overtime rate. *See Turner v. Human Genome Sciences, Inc.*, 292 F. Supp. 2d 738, 748 (D. Md. 2003) (stating that a plaintiff's testimony on unpaid wages is sufficient to make a *prima facie* showing of unpaid wages) (citing *Donovan*, 549 F. Supp. at 485 (D. Md. 1982)); *Quiroz v. Wilhelm Commercial Builders, Inc.*, Civ. Action No. WGC-10-2016, 2011 WL 5826677, at *2 (D. Md. Nov. 17, 2011) (holding that, on default judgment, "[t]he court ... may rely on affidavits or other evidentiary documents in the record to determine the amount of damages."). G.O. Contractors and Gomez are thus liable to Cruz Mata, Lopez Martinez, and Reyes Castro under the FLSA and MWHL for those unpaid overtime hours.

Defendants are also liable to Plaintiffs under the MWPCL. A violation under the MWPCL occurs when an employer fails to pay "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a). The MWPCL defines "wage" as "all compensation that is due to an employee for employment," including overtime pay. *Id.* § 3-501(c); *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625-26 (Md. 2014) ("[B]oth the [M]WHL and the [M]WPCL are vehicles for recovering overtime wages."). Plaintiffs establish through their uncontested allegations in the Complaint and their individual affidavits that G.O. Contractors and Gomez violated the MWPCL by both failing to pay and failing timely to pay Plaintiffs regular and overtime wages owed. *See Turner*, 292 F. Supp. 2d at 748. Cruz Mata asserts that, in addition to working 1,727.54 overtime hours for which he was not compensated at the mandated overtime rate, he also worked 144.44 hours without any compensation at all. Lopez Martinez avers that he worked 295.44 hours of overtime for which he was not compensated at the mandated overtime rate. Reyes Castro states that in addition to working 580.96 hours of overtime without being paid at the mandated overtime rate, he also worked 170 hours without any compensation. Melgar Martinez declares that he worked 68 hours for which he was not compensated. G.O. Contractors and Gomez are thus liable to Plaintiffs under the MWPCL for those unpaid wages.

### III. Damages

Because Plaintiffs have established that G.O. Contractors and Gomez are liable for violations of the FLSA, the MWHL, and the MWPCL, the Court turns to the question of damages. Under the FLSA, a plaintiff may receive both his unpaid wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Under the MWPCL, if wages are

withheld not as a result of a bona fide dispute, a plaintiff may receive both his unpaid wages and "an amount not exceeding 3 times the wage." Md. Code Ann., Lab. & Empl. § 3-507.2(b).

Although Plaintiffs have established liability under the FLSA, MWHL, or MWPCL, they cannot recover more than once for the same harm. *See Gen. Tel. Co. of the Northwest, Inc. v. EEOC,* 446 U.S. 318, 333 (1980) ("It ... goes without saying that the courts can and should preclude double recovery by an individual."); *Welsh v. Gerber Products, Inc.*, 555 A. 2d 486, 492 (Md. 1989) ("[T]he party injured may have but one satisfaction.") (internal quotation marks and citation omitted)). Thus, enhanced damages may take the form of liquidated damages under the FLSA or trebled damages under the MWPCL, but not both. Therefore, the Court will award damages under the MWPCL as that statute provides the avenue for greatest recovery.

A. Unpaid Wages[1]

In order to calculate damages for unpaid overtime under both the FLSA and the MWHL, the Court takes the undercompensated hours and multiplies that figure by one-half the employee's base hourly rate, the difference between the mandated overtime rate and the

---

[1] Although some of violations at issue here are arguably outside the relevant statutes of limitations, because the statute of limitations is an affirmative defense, the Court declines to raise this issue *sua sponte*. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653-54 (4th Cir. 2006) (citing *Arizona v. California*, 530 U.S. 392, 412-13 (2000)) (holding that a statute of limitations defense should not be raised *sua sponte* because, as an affirmative defense, it is waivable by inaction). Even if the Court did examine this affirmative defense, it would have little impact on Plaintiffs' recovery. Maryland's statute of limitations allows claims under the MWHL and MWPCL to extend back three years. Md. Code Ann., Cts. & Jud. Proc. §5-101. The FLSA has a three-year statute of limitations in the case of a "willful violation," 29 U.S.C. § 255(a), which Plaintiffs have alleged. Here, this suit was filed in October 2014, making the three-year cut-off October 2011. Only Cruz Mata and Reyes Castro have claims prior to October 2011. Cruz Mata's claims reach back only to August 2011, and Reyes Castro's to March 2011. The bulk of their claims, and the claims of the other Plaintiffs, involve conduct well within the three-year statute-of-limitations period. Moreover, the statute of limitations may be equitably tolled until plaintiffs learn of their FLSA rights or retain an attorney in cases in which, as here, a defendant fails to post signs advising employees of their wage rights. *See Cruz v. Maypa*, 773 F.3d 138, 146-47 (4th Cir. 2014) (analogizing and applying failure-to-post equitable tolling of Age Discrimination in Employment Act claims to the context of FLSA claims).

9

employee's regular rate. *See* 29 U.S.C. § 207; Md. Code Ann., Lab. & Empl. § 3-427. For the unpaid regular time recoverable under the MWPCL, the Court takes the hours worked without compensation and multiplies that figure by the employee's base hourly rate.

1.   **Cruz Mata**

Cruz Mata worked 940.88 hours of overtime between August 1, 2011 and March 14, 2013, when his base hourly wage was $16.00 per hour. He is therefore owed $7,527.04 in unpaid overtime for those hours (940.88 hours x $8.00/hour). He worked an additional 780.16 hours of overtime between March 15, 2013 and December 31, 2013, at which point his base hourly wage was $18.00 per hour. He is therefore owed $7,021.44 in unpaid overtime for those hours (780.16 hours x $9.00/hour). He also worked 6.5 hours of overtime between July 12, 2014 and July 18, 2014, at which point his base hourly wage was $20.00 per hour. He is therefore owed $65.00 in unpaid overtime for those hours (6.5 hours x $10.00/hour). Cruz Mata also worked 144.44 regular hours between March 15, 2013 and May 30, 2014 for which he was not compensated at all. His base hourly wage during that time period was $18.00 per hour. Therefore, he is owed $2,599.92 in regular wages (144.44 hours x $18/hour).

When the unpaid overtime compensation ($14,613.48) and regular wages ($2,599.92) are combined, Cruz Mata is owed a total of $17,213.40 in unpaid wages.

2.   **Lopez Martinez**

Lopez Martinez worked 295.44 hours of overtime at a base hourly wage of $17.00 per hour.[2] He is therefore owed $2,511.24 in unpaid overtime for those hours (295.44 hours x $8.50/hour).

---

[2] In the Supplement to the Motion for Default Judgment, ECF No. 9, Lopez Martinez asserts that he was not compensated for 335.44 overtime hours, an increase from the 295.44 overtime hours alleged in the Complaint and Lopez Martinez's Declaration of wages owed. Because both

10

### 3. Reyes Castro

Reyes Castro worked 242.56 overtime hours between March 1, 2011 and April 11, 2013, at which point his base hourly wage was $15.00 per hour. He is therefore owed $1,819.20 in unpaid overtime for those hours (242.56 hours x $7.50/hour). He worked an additional 338.40 hours of uncompensated overtime between April 12, 2013 and July 31, 2014, at which point his base hourly wage was $16.00 per hour. He is therefore owed $2,707.20 in unpaid overtime for those hours (338.40 hours x $8.00/hour). Reyes Castro worked 170 regular hours between April 12, 2013 and July 31, 2014 for which he was not compensated. His base hourly wage during that time period was $16.00. Therefore, he is owed $2,720.00 in unpaid regular wages (170 hours x $16.00/hour).

When the amount of overtime compensation owed to Reyes Castro ($4,526.40) is added to the amount of regular wages owed to him ($2,720.00), Reyes Castro is owed a total of $7,246.40 in unpaid wages.

### 4. Melgar Martinez

Melgar Martinez worked 68 regular hours between December 9, 2013 and December 19, 2014 for which he was not compensated. His base hourly wage during that time period was $17.00 per hour. Therefore, he is owed $1,156.00 in regular wages (68 hours x $17/hour).

### B. Enhanced Damages

The MWPCL allows the Court, at its discretion, to award treble damages when there is no bona fide dispute over the owed wages. Md. Code Ann., Lab. & Empl. § 3-507.2(b). These significantly enhanced damages serve a punitive purpose and also compensate plaintiffs for any

---

the Complaint and the Declaration of Lopez Martinez, which was not later amended, assert that he worked 295.44 unpaid overtime hours, and the damages calculation must be based on evidence presented, the Court bases its calculation on that figure.

consequential damages incurred as a result of being unpaid or underpaid. *See Admiral Mortg., Inc. v. Cooper*, 745 A.2d 1026, 1034 (Md. 2000) (emphasizing the importance of enhanced damages because the recovery of unpaid wages alone may not compensate for "significant consequences" of being underpaid or unpaid, such as "being unable to meet ... weekly or monthly obligations, ranging from embarrassment, to late charges, to repossessions, eviction, and, if the employee is responsible for child support, the prospect of coercive court proceedings and the loss of various licenses and privileges"). Furthermore, the legislative intent for treble damages was to give plaintiffs the same award that they would receive if the Commissioner of Labor and Industry had brought suit on their behalf. *Friolo v. Frankel*, 819 A.2d 354, 363-64 (Md. 2003). Therefore, taking into consideration the purpose of enhanced damages and Defendants' failure to dispute any of Plaintiffs' allegations, this Court finds that treble damages under the MWPCL are appropriate in this case. Accordingly, the Court shall enter a judgment for Cruz Mata in the amount of $51,640.20, for Lopez Martinez in the amount of $7,533.72, for Reyes Castro in the amount of $21,739.20, and for Melgar Martinez in the amount of $3,468.00.

### C. Prejudgment Interest

Plaintiffs also seek prejudgment interest. Because of the availability of enhanced damages, however, such interest is unnecessary and duplicative. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945) ("To allow an employee to recover the basic statutory wage and liquidated damages, with interest, would have the effect of giving an employee double compensation for damages arising from delay in the payment of the basic minimum wages[.]"); *Masters v. Md. Mgmt. Co.*, 493 F.2d 1329, 1334 (4th Cir. 1974) (affirming the district court's refusal to award prejudgment interest because "[t]he award of liquidated damages more than

adequately compensated for the delay in payment of overtime wages due"). Plaintiffs' claim for prejudgment interest is therefore denied.

### D. Attorney's Fees and Costs

Plaintiffs seek $7,534.50 in attorney's fees and $403.19 in costs. Attorney's fees and costs are recoverable under the relevant statutes. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); Md. Code Ann., Lab. & Empl. § 3–427(a)(3) (MWHL), § 3–507.2(b) (MWPCL).

To calculate awarded attorney's fees, the United States Court of Appeals for the Fourth Circuit employs the lodestar approach, which takes a reasonable hourly fee, determined by the market rate, and multiplies that by the number of hours worked. *See, e.g., Grissom v. The Mills Corp.*, 549 F.3d 313, 320-324 (4th Cir. 2008). The Court may then adjust that amount based on the success of claims brought by the attorneys. *Id.* This Court's Local Rules supply reasonable hourly rate ranges to help determine appropriate awards. *See* D. Md. Local R., Appendix B § 3. Here, Plaintiffs' lead counsel, Mary Craine Lombardo, submitted a declaration and a spreadsheet breaking down the hours billed and costs incurred. Those documents indicate that Lombardo, who has been a member of the bar for 14 years, spent 6.4 hours on this case, at a rate of $395.00/hour. Her co-counsel, Jonathan Lieberman, who has also been an attorney for 14 years, spent 8.4 hours on the case, also at a rate of $395.00/hour. Eduardo Garcia, a junior associate whose tenure as a member of this bar is not disclosed, spent 5.5 hours on this case at a rate of $225/hour and one hour on the case at a rate of $275/hour. A paralegal spent 1.1 hours on the case at a rate of $160/hour.

While the total time spent on this case, 22.4 hours, is reasonable, the fees charged are outside the range recommended by this Court. This Court's guidelines specify a rate range of $225-$350 for attorneys admitted to the bar for 9 to 14 years, a rate range of $150-$225 for attorneys admitted to the bar for fewer than five years, and a rate range of $95-$150 for paralegals. D. Md. Local R. Appendix B: Guideline 3. Because this case does not involve matters that are particularly complicated or novel, a departure from this Court's normal fee range is unwarranted. The Court thus determines the attorney's fee award at the following rates: $350/hour for Lombardo and Lieberman; $225/hour for Garcia, and $150/hour for paralegal work. Plaintiffs' counsel are therefore awarded a total of $6,807.00 in attorneys' fees.

As for costs, the billing documents submitted substantiate the following expenses: $400.00 for the filing fee, $2.00 in copy costs, and $1.19 for postage. Plaintiffs are therefore awarded $403.19 in costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, ECF No. 7, is GRANTED. Plaintiffs are awarded a total of $91,591.31, consisting of $84,381.12 in damages, $6,807.00 in attorney's fees, and $403.19 in costs, as more specifically set forth in the separate Order accompanying this Memorandum Opinion.

Date: October 28, 2015

THEODORE D. CHUANG
United States District Judge